JACOB LICHTER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JENNIE L. LICHTER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 24323, 24324. Promulgated January 7, 1952.

*Paul W. Steer, Esq.*, for the petitioners.
*John O. Durkan, Esq.*, for the respondent.

OPINION.

VAN FOSSAN, *Judge:* Two issues are presented in these proceedings. The first relates to the subject of a family partnership—specifically, whether petitioner and his wife were partners in the Southern Fireproofing Company during the taxable years 1942 and 1943. The law is clear that it is possible for a husband and wife to form a valid partnership which is recognizable for tax purposes. *Commissioner* v. *Tower*, 327 U. S. 280; *Lusthaus* v. *Commissioner*, 327 U. S. 293. The real test of such validity has been stated by the Supreme Court to be " * * * not whether the services or capital contributed by a partner are of sufficient importance to meet some objective standard * * *, but whether, considering all the facts * * * the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise. * * *" *Commissioner* v. *Culbertson*, 337 U. S. 733.

Both petitioner and his wife have testified that from the beginning of the Company there existed between them an oral agreement whereby they were to share the profits equally. We have no reason to question the truthfulness of the statements. Respondent argues that the instrument executed in 1929 would have been unnecessary had the previous agreement in fact existed. Perhaps the written agreement added nothing to the legality of the arrangement as a partnership. It is at least corroborative of their intent. When we consider all the facts surrounding the inception of the Company, together with the conduct of the parties throughout the subsequent years, we can readily accept petitioner's explanation that the 1929 instrument was but an unskillful attempt to acknowledge in writing the pre-existing arrangement. When the Company was formed in 1926 the thought of tax benefits was not a dominating motive. If it be said that the agreement was belated it should also be said that it did not detract from the partnership history or status.

On the record of fact, circumstance and concurrent action, we conclude that the intention of petitioner and his wife from the beginning was that a partnership should exist between them.

Accordingly, respondent is reversed as to this issue.

There remains for our consideration the issue involving the bonus and profit sharing plan initiated by the Company in 1941 to benefit

certain of its employees. Respondent has disallowed the deduction of payments made thereto by the Company during the taxable years 1942 and 1943.

With regard to the payments made in 1942, the claim for the deduction in controversy is based upon the provisions of section 23 (p) (1) (A) and (D), Internal Revenue Code.[1] The applicability of section 23 (p) (1) (A) is grounded upon petitioner's premise that the plan qualifies as an employees' trust within the meaning of section 165 (a), I. R. C.,[2] prior to its amendment by the Revenue Act of 1942.[3] Petitioner admits that the plan did not so qualify during the year 1943, and claims deductibility of the amounts contributed thereto during that year under section 23 (p) (1) (D), *supra*.

First to be considered is petitioner's position that the plan was a qualified employee's trust during 1942. So to qualify under the applicable provisions of the law in force at that time, there must be no way under the trust instrument for any part of the corpus or income of the trust to be diverted to any use other than the exclusive benefit of the employee-beneficiaries "* * * at any time prior to the satisfaction of all liabilities with respect to employees under the trust, * * *." Section 165, *supra*.

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions :

\* \* \* \* \* \* \*

(p) CONTRIBUTIONS OF AN EMPLOYER TO AN EMPLOYEES' TRUST OR ANNUITY PLAN AND COMPENSATION UNDER A DEFERRED-PAYMENT PLAN.—

(1) GENERAL RULE.—If contributions are paid by an employer to or under a stock bonus, pension, profit-sharing, or annuity plan, or if compensation is paid or accrued on account of any employee under a plan deferring the receipt of such compensation, such contributions or compensation shall not be deductible under subsection (a) but shall be deductible, if deductible under subsection (a) without regard to this subsection, under this subsection but only to the following extent :

(A) In the taxable year when paid, if the contributions are paid into a pension trust, and if such taxable year ends within or with a taxable year of the trust for which the trust is exempt under section 165 (a), in an amount determined as follows :

\* \* \* \* \* \* \*

(D) In the taxable year when paid, if the plan is not one included in paragraphs (A), (B), or (C), if the employees' rights to or derived from such employer's contribution or such compensation are nonforfeitable at the time the contribution or compensation is paid.

[2] SEC. 165. EMPLOYEES' TRUSTS.

(a) EXEMPTION FROM TAX.—A trust forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of some or all of his employees

(1) if contributions are made to the trust by such employer, or employees, or both, for the purpose of distributing to such employees the earnings and principal of the fund accumulated by the trust in accordance with such plan, and

(2) if under the trust instrument it is impossible, at any time prior to the satisfaction of all liabilities with respect to employees under the trust, for any part of the corpus or income to be (within the taxable year or thereafter) used for, or diverted to, purposes other than for the exclusive benefit of his employees,

shall not be taxable under Section 161, \* \* \*.

[3] See section 162 (d) of the Revenue Act of 1942 as to the effective dates and taxable years under such amendments.

We turn then to the trust instrument in question. Under its provisions, the powers and duties of the trustee are sharply limited. The trustee can perform no act nor exercise any powers except under the directions and instructions of an Advisory Board. Apparently, members of the Board may be appointed and removed at the uncontrolled whim of the employer, there being no term of office prescribed. The only limitation is that an individual member shall hold office until his successor is appointed.

The Advisory Board has full control over the disposition, allotment, investment or distribution of trust assets. It has authority to direct a change in beneficiaries. Furthermore, upon the happening of certain contingencies, the trust is to terminate and its corpus be distributed or disposed of in any manner directed by the Board.

The trustor has reserved the right to alter, modify, or amend the provisions of the trust agreement. The only restriction to which this right is subject is a provision that under no circumstances shall any part of the trust assets revert to the employer. No standards are set up to establish eligibility for benefits. In fact, there is no reference in the body of the trust instrument to any employees, individually or as a class. At one place the instrument provides "The Trustee may purchase annuity or life insurance policies on *such individuals or group of individuals* as the Advisory Board may direct * * *." (Emphasis added.) While it might possibly be assumed that this provision has reference to employees, there is nothing specific upon which to base such an assumption. Nothing requires any benefits to be distributed to any employee or retired employee. "* * * Such an arrangement whereby an employer retains the power to 'sprinkle its beneficiencies' among a selected segment of its employees through the medium of a trust which it creates, does not satisfy the provisions of section 165, *supra*, * * *." *South Texas Commercial National Bank of Houston*, 7 T. C. 764, affd. 162 F. 2d 462. Therefore, the payments made to the fund during 1942 may not be deducted under section 23 (p) (1) (A), *supra*.

Turning to the question of deductibility of the amounts contributed in both 1942 and 1943 under section 23 (p) (1) (D), *supra*, it is to be noted that this section provides for the deduction of such payments if, at the time they are made, the employees' beneficial interests under the plan are nonforfeitable. Such provision has been construed to mean that "* * * an employee's beneficial interest in the contribution is non-forfeitable within the meaning of * * * 23 (p) (1) (D) at the time the contribution is made if there is no contingency under the plan which may cause the employee to lose his rights in the contribution. * * *" See Regulations 111, section 29.165–7.

What we have said above regarding the trust instrument is equally apposite here. Under certain fortuitous circumstances the trust assets may be disposed of or distributed in any manner that the Advisory Board, in its discretion, prescribes. This provision furnishes just such a contingency as is above described, albeit implied. For aught in the record before us, no enforceable beneficial interest is granted to anyone.

The foregoing also applies to the amount deposited to Pullen's credit in the plan in 1943. In addition, the evidence indicates that such amount has never been paid to Pullen or to his estate, and that its payment is now being contested.

Accordingly, respondent is sustained as to this issue.

*Decisions will be entered under Rule 50.*